UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/24/2014
```

EDWARD B. MENDY,

              Plaintiff,

      - against -

JP MORGAN CHASE & CO., CHASE AUTO
FINANCE CORP., JANE DOE, JOHN DOE,
DOES 1 THROUGH DOES 10, ABC
INSURANCE COMPANY, and XYZ
INSURANCE COMPANY

              Defendants.

**MEMORANDUM
OPINION & ORDER**

12 Civ. 8252 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       Pro se Plaintiff Edward Mendy brings this action, pursuant to the Fair Credit

Reporting Act (the "FCRA"), 15 U.S.C. § 1681 et seq., alleging that Defendants JP Morgan

Chase & Co. and Chase Auto Finance Corp. provided inaccurate information to credit reporting

agencies and failed to properly investigate the inaccuracies after Plaintiff disputed them. (Cmplt.

(Dkt. No. 1) ¶¶ 51-76) Plaintiff also asserts state law claims for consumer fraud, defamation,

intentional infliction of emotional distress, invasion of privacy, breach of contract, and breach of

the implied covenant of good faith and fair dealing. (Id. ¶¶ 77-151)

       Defendants have moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).

(Dkt. No. 12) For the reasons stated below, Defendants' motion to dismiss will be granted in

part and denied in part.

# BACKGROUND[1]

On April 11, 2008, Plaintiff entered into two related contracts with Defendants: a Promissory Note and Security Agreement (the "PNSA"), and a Disbursement Request and Authorization (the "DRA"). (Cmplt. (Dkt. No. 1) at ¶¶ 17-19; Wilk Decl. (Dkt. No. 16), Exs. 1, 2)[2] Plaintiff entered into these agreements with Defendants in order to obtain financing to purchase a 2003 Toyota Sequoia. (Cmplt. (Dkt. No. 1) at ¶¶ 17-19) In the PNSA, Defendants agree to provide Plaintiff with $17,642.67 to purchase the truck, to pay $1,665.34 in "fees and taxes . . . to governmental agencies," and to register the vehicle. (Wilk Decl. (Dkt. No. 16), Ex. 1; Pltf. Br. (Dkt. No. 23) at 4)[3] The DRA states that the $1,665.34 in "fees and taxes" includes $1,587.84 for "estimated sales tax." (Wilk Decl. (Dkt. No. 16), Ex. 2) Defendants charged Plaintiff $75.00 as a loan origination fee. (Id., Ex. 1) Accordingly, the balance on Plaintiff's account totaled $19,308.01. The PNSA provides for an annual interest rate of 9.392%. (Id.)

The PNSA provides that it is

> governed by the laws (including, but not limited to, any and all statutes,
> regulations, interpretations, and opinions) of the United States and the State of
> Ohio for all matters related to interest and the exportation of interest. For all other
> matters, this Agreement will be governed by the laws of the United States, and the
> state of residence of the borrower (to the extent that such laws are not preempted
> by the laws of the United States).

---

[1] The following facts are drawn from the Complaint and are presumed true for purposes of resolving Defendants' motion to dismiss. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

[2] In deciding a motion to dismiss, a court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which [the plaintiff] relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Here, the contracts between the parties are incorporated into the Complaint by reference.

[3] "In view of [Plaintiff's] pro se status, the Court also may rely on [his] opposition papers in assessing the legal sufficiency of his claims." Manolov v. Borough of Manhattan Cmty. Coll., 952 F. Supp. 2d 522, 531 (S.D.N.Y. 2013).

(Id.)  Plaintiff alleges that he was a New Jersey resident at all relevant times.[4]  (Pltf. Br. (Dkt. No. 23) at 16)

The PNSA requires Plaintiff to make monthly payments of $484.08 until the principal and interest associated with the loan are paid in full.  (Id.)  Plaintiff made this payment each month between April 2008 and July 2012, at which point his debt was repaid and his account was closed.  (Cmplt. (Dkt. No. 1) ¶¶ 17, 24, 33)

On August 24, 2011, Defendants increased Plaintiff's principal balance by $1,050.18.  (Id. ¶¶ 30, 33, 53)  Between September 2011 and July 2012, Defendants repeatedly sent Plaintiff notices and statements reflecting this increase and demanding repayment in full. (Id. ¶¶ 32-33)  The increase reflected penalties that Defendants had been charged for late payment of Louisiana sales tax on Plaintiff's vehicle.  (Id. ¶¶ 54-55; Pltf. Br. (Dkt. No. 23) at 4) Defendants contend that the taxes were paid late because Plaintiff had not provided information and documents necessary to register the vehicle – information and documents that Defendants had repeatedly requested.  (Def. Reply Br. (Dkt. No. 25) at 5)  Plaintiff maintains that Defendants bear sole responsibility for the late registration.  (Pltf. Br. (Dkt. No. 23) at 4)

Plaintiff objected to the increase in principal and the corresponding interest, arguing that he should not be penalized for Defendants' failure to pay the taxes on time.  (Cmplt. (Dkt. No. 1) ¶¶ 29-31, 55)  Beginning in September 2011, Plaintiff sent at least three letters to Defendants disputing the increase in his loan balance.  (Id. ¶ 35)  Defendants responded that the

---

[4]  Defendants assert that Plaintiff was a Louisiana resident when the parties entered into the PNSA and DRA.  (Def. Reply Br. (Dkt. No. 25) at 8)  Plaintiff's state of residence has been redacted from the PNSA and the DRA.  (See Wilk Decl. (Dkt. No. 16), Exs. 1, 2)  Under these circumstances, and for purposes of deciding Defendants' motion to dismiss, this Court will accept Plaintiff's allegations concerning his residence as true.

balance on the account was correct and refused to make any changes. (Id. ¶¶ 32-33, 36) Plaintiff continued to dispute the increase and refused to make payments toward that amount, which he believed he did not owe. (Id. ¶ 38)

   Defendants reported the increase in Plaintiff's loan balance to credit reporting agencies, without notifying the agencies that Plaintiff disputed the increase.[5] (Id. ¶¶ 38-40, 57) Defendants also reported that Plaintiff was delinquent on his payments. (Id. ¶ 38) As a result, at least three credit reporting agencies – Equifax, Experian, and TransUnion – placed this information on Plaintiff's credit report. (Id. ¶¶ 39-42, 57) Plaintiff "filed several disputes with the credit reporting agencies," prompting each company to conduct a "reinvestigation" of Defendants' reporting. (Id. ¶¶ 42, 60) "[I]n response to the notices of reinvestigation from the [c]redit [r]eporting [a]gencies, [Defendants] verified that the disputed information was accurate and complete on at least three different occasions, even though they were in possession of information which showed that the [information was] inaccurate." (Id. ¶ 68) As a result, Plaintiff's Experian score dropped from 720 to 584 in the first half of 2012. (Id. ¶ 69, Ex. A) Plaintiff eventually paid the full amount of the increased principal and interest "[t]o protect his credit score and to militate against further erosion of his credit scores." (Id. ¶ 61-62)

   While Plaintiff was disputing the increase in his loan balance, he was also engaged in an ongoing dispute with Defendants regarding alleged late payments reflected on his credit file. (Id. ¶¶ 25-28, 43-47) Plaintiff claims that only one of his loan payments was ever late, and that was the result of a "reversal[] of auto-debit by Chase . . . which Chase failed to notify Plaintiff of." (Id. ¶ 25) When Plaintiff notified Defendants of the error, "they

---

[5] Defendants regularly provide information to credit reporting agencies about their transactions or experiences with consumers. (Cmplt. (Dkt. No. 1) ¶ 52)

acknowledged fault and agreed to not only remove the late reporting but also to reverse the applicable fee(s)." (Id. ¶ 26)  Defendants reversed the fees, but Plaintiff's credit file continued to reflect late payments. (Id. ¶ 27)  When Plaintiff again sought to have the error corrected, Defendants refused to do so. (Id. ¶¶ 23, 43-45, 47)  As a result, Plaintiff's credit scores plummeted and his credit lines with third-parties, including eBay, were reduced. (Id. ¶ 28)

At some point prior to full repayment of the loan, Defendants increased the interest rate to 9.44%, even though the PNSA specified that the rate would be 9.392%. (Cmplt. (Dkt. No. 1) ¶ 80)

The Complaint was received by this District's Pro Se Office on November 13, 2012. (Cmplt. (Dkt. No. 1))  On May 31, 2013, Defendant moved to dismiss or, in the alternative, for judgment on the pleadings or for summary judgment. (Dkt. No. 12)

## DISCUSSION

I. **LEGAL STANDARD**

A. **Motion to Dismiss**

Defendants have moved to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

Because Plaintiff is proceeding pro se, this Court is required to read his complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed.'") (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  Accordingly, this Court will construe Plaintiff's pleadings "'to raise the strongest arguments that they suggest.'" Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (quoting Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)).  "Moreover, [factual] allegations made in a pro se plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss." Braxton v. Nichols, No. 08 Civ. 08568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010).  However, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact.'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)).

**B.**     **The Fair Credit Reporting Act**

"The Fair Credit Reporting Act [('FCRA')], 15 U.S.C. § 1681 et seq., regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information." Longman v. Wachovia Bank, N.A., 702 F.3d 148, 150 (2d Cir. 2012); see 15 U.S.C. § 1681(b).  "As part of this regulatory scheme, the Act imposes several duties on those who furnish information to consumer reporting agencies." Longman, 702

6

F.3d at 150; <u>see</u> 15 U.S.C. § 1681s-2.  "Among these are duties to refrain from knowingly reporting inaccurate information, <u>see</u> § 1681s-2(a)(1), and to correct any information they later discover to be inaccurate, <u>see</u> § 1681s-2(a)(2)."[6]  <u>Longman</u>, 702 F.3d at 150.

---

[6]  15 U.S.C. § 1681s-2(a)(1) and (2) in part provide:

Duty of furnishers of information to provide accurate information

(1) Prohibition

(A) Reporting information with actual knowledge of errors

A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

(B) Reporting information after notice and confirmation of errors

A person shall not furnish information relating to a consumer to any consumer reporting agency if--

(i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and

(ii) the information is, in fact, inaccurate.

. . . .

(2) Duty to correct and update information

A person who--

(A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

(B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate,

shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to

Under the FCRA, "[c]onsumers have the right to dispute any information reported to a credit reporting agency." <u>Id.</u> at 150-51 (citing 15 U.S.C. §§ 1681g(c)(1)(B)(iii), 1681i(a)(1)(A), 1681s-2(a)(8)).  "If a dispute is filed with the agency, both the agency and the furnisher of that information have a duty to reasonably investigate and verify that the information is accurate." <u>Id.</u> at 151 (citing 15 U.S.C. §§ 1681i(a)(1)(A), 1681s-2(b)).[7]  "If a dispute is filed

---

the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

(3) Duty to provide notice of dispute

If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

[7]  15 U.S.C. § 1681s-2(b)(1) provides:

Duties of furnishers of information upon notice of dispute

(1) In general

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall --

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

directly with the furnisher, [however,] the furnisher only has a duty to investigate in certain circumstances established by regulation." Id. (citing 15 U.S.C. § 1681s-2(a)(8); 16 C.F.R. § 660.4; Chiang v. Verizon New Eng. Inc., 595 F.3d 26, 35 & n.8 (1st Cir. 2010)).

## II.   ANALYSIS

### A.   Sufficiency of the Complaint

As a preliminary matter, Defendants argue that the Complaint should be dismissed because it "contains conclusory allegations," "is not concise, simple, and direct," and "lacks sufficient particularity." (Def. Br. (Dkt. No. 17) 4-6)  These arguments are without merit. As discussed above, the Complaint pleads facts demonstrating, inter alia, that Defendants improperly reported to credit reporting agencies Plaintiff's increased loan balance and delinquency.  This information then appeared on Plaintiff's credit report.  According to Plaintiff, the increased loan balance was the result of Defendants' failure to meet their obligation – under the parties' contracts – to pay state sales tax on Plaintiff's behalf.  After Plaintiff disputed the increase in loan balance and corresponding interest, Defendants did not inform the reporting agencies that the matter was in dispute and did not correct their erroneous reports.  Defendants likewise did not correct inaccurate information provided to credit reporting agencies about Plaintiff's alleged late payments, even after Defendants conceded that the information contained in Plaintiff's credit file was false.  Plaintiff claims that, as a result of Defendants' erroneous

---

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

　　(i) modify that item of information;
　　(ii) delete that item of information; or
　　(iii) permanently block the reporting of that item of information.

reports to credit reporting agencies, his credit score dropped dramatically.  As a result, he was unable to obtain financing, and suffered a variety of losses.  These factual allegations are sufficient "to give the defendant[s] fair notice of what the claim[s are] and the grounds upon which [they] rest[ ]," Port Dock & Stone Corp., 507 F.3d at 121 (citing Twombly, 550 U.S. at 555), particularly in light of the liberal reading afforded pro se pleadings.[8]

**B.    Fair Credit Reporting Act Claim**

It is undisputed that Defendants are "furnishers of information" to credit reporting agencies within the meaning of the FCRA.  (See Def. Br. (Dkt. No. 17) at 11 ("Chase reports increases in . . . loan amount[s] . . . to credit reporting agencies.")); see also Longman, 702 F.3d at 150.  Defendants argue, however, that Plaintiff's FCRA claim must be dismissed because (1) to the extent Plaintiff asserts a claim under 15 U.S.C. § 1681s-2(a), that section does not provide a private right of action; and (2) Plaintiff has not alleged that a credit reporting agency gave Defendants notice that Plaintiff disputed information that they had provided, as required by 15 U.S.C. § 1681s-2(b).  (Def. Br. (Dkt. No. 17) at 8-9)

Defendants are correct that "there is no private cause of action for violations of § 1681s-2(a)."  Longman, 702 F.3d at 151.  "[T]he statute plainly restricts enforcement of that provision to federal and state authorities."  Id.  Accordingly, to the extent that Plaintiff seeks to hold Defendants liable under Section 1681s-2(a) of the FCRA for failing to investigate disputed items that Plaintiff raised with Defendants directly, his FCRA claim must be dismissed.

---

[8]  Defendants also move to strike the Complaint under Fed. R. Civ. P. 12(f), arguing that it contains "impertinent" material.  (See Def. Br. (Dkt. No. 17) at 6)  There is no basis for this application.  The Complaint's factual allegations directly relate to the matters at issue in this case.  See Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").

"Unlike . . . Subsection (a), [however,] . . . courts have generally allowed consumers to pursue private claims for 'willful or negligent noncompliance with Section 1681s-2(b).'" Kane v. Guar. Residential Lending, Inc., No. 04-CV-4847 (ERK), 2005 WL 1153623, at *5 (E.D.N.Y. May 16, 2005) (quoting O'Diah v. N.Y.C., No. 02 Civ. 274 (DLC), 2002 WL 1941179, at *13 (S.D.N.Y. Aug. 21, 2002) (collecting cases)). "However, the duty to investigate in Subsection (b) is triggered only after a furnisher of information receives notice from a credit reporting agency of a consumer's dispute." Id. at *4 (emphasis in original). "A plaintiff proceeding under 1681s-2(b) is required to show that the furnisher was told by a credit reporting agency that the consumer's information was disputed, as opposed to being told by the consumer directly." Kinel v. Sherman Acquisition II LP, No. 05 Civ. 3456 (RC) (THK), 2006 WL 5157678, at *15 (S.D.N.Y. Feb. 28, 2006), report and recommendation adopted, No. 05 Civ. 3456 (KMW), 2007 WL 2049566 (S.D.N.Y. July 13, 2007).

Here, Plaintiff has pled that three credit reporting agencies informed Defendants that Plaintiff was disputing certain information that Defendants had provided. The Complaint alleges that (1) Plaintiff had "filed several disputes with the credit reporting agencies, to have Chase reduce the debt" (Cmplt. (Dkt. No. 1) ¶ 60); (2) three credit reporting agencies – Equifax, Experian, and TransUnion – had conducted "reinvestigations" of Plaintiff's dispute (id. ¶ 42); (3) Defendants, "in response to the notices of reinvestigation from the Credit Reporting Agencies, verified that the disputed information was accurate and complete on at least three different occasions" (id. ¶ 68); and (4) "[t]he results of the reinvestigation . . . completed by the three credit [reporting agencies] indicated that Chase verified to Equifax, Experian and TransUnion that the [information Chase had provided] was complete and accurate." (Id. ¶ 42)

11

These allegations are sufficient to demonstrate that Defendants were "told by a credit reporting agency that [Plaintiff's] information was disputed." <u>Kinel</u>, 2006 WL 5157678, at *15.

Accepting the allegations of the Complaint as true, Plaintiff has stated a claim under 15 U.S.C. § 1681s-2(b).[9]

### C.   State Law Claims

The Complaint asserts state law claims for violations of New York General Business Law § 349 and the New Jersey Consumer Fraud Act; intentional infliction of emotional distress; invasion of privacy; defamation; breach of contract; and breach of the implied duty of good faith and fair dealing.

### 1.   FCRA Preemption

Under the FCRA, "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F).  In interpreting this provision, the Second Circuit has held that where a plaintiff's "allegations of false reporting concern conduct regulated by § 1681s-2[,] . . . § 1681t(b)(1)(F) bars [the plaintiff's] state law tort claims." <u>Macpherson v. JPMorgan Chase Bank, N.A.</u>, 665 F.3d 45, 47 (2d Cir. 2011) (<u>per curiam</u>) (holding that defamation and intentional infliction of emotional distress claims were preempted by the FCRA); <u>see also</u> <u>Sprayregen v. Bank of Am., N.A.</u>, No. 2:11-CV-00115, 2012 WL 2994633, at *2 (D. Vt. July 23, 2012) ("the Second Circuit has expressly . . . interpret[ed] section 1681t(b)(1)(F) as

---

[9]   Defendants also argue that Plaintiff's FCRA claim should be dismissed because Plaintiff cannot demonstrate losses resulting from Defendants' reporting. (Def. Br. (Dkt. No. 17) at 11-12)  Plaintiff has alleged, however, that his credit score plummeted as a result of Defendants' inaccurate reporting, and that he suffered a variety of losses as a result.  These allegations are sufficient at this stage of the proceeding.

creating a broad preemption, barring all state law claims"); Barberan v. Nationpoint, 706 F.

Supp. 2d 408, 429-30 (S.D.N.Y. 2010) ("As pled, Plaintiffs' tort claims fall squarely within the

subject matter regulated under § 1681s-2, which governs the furnishing of information to credit

agencies. . . . As a result, Plaintiffs' state common law claims are preempted by § 1681t(b)(1)(F)

. . . ."; negligence, breach of fiduciary duty, and wrongful foreclosure claims dismissed).  This

rule applies whether plaintiff's tort claims are founded in statute or the common law.  See

Barberan, 706 F. Supp. 2d at 429 (citing Premium Mortgage Corp. v. Equifax, Inc., 583 F.3d

103, 106 (2d Cir. 2009) ("Plaintiff's distinction between statutory and common-law claims under

this section of the FCRA's express preemption provision is likewise unpersuasive.  'The phrase

"[n]o requirement or prohibition" sweeps broadly and suggests no distinction between positive

enactments and common law . . .'")).

      Accordingly, to the extent that Plaintiff's state law claims fall within the subject

matter regulated by the FCRA, they are preempted and will be dismissed.

      **2.**    **<u>Choice of Law</u>**

      Before addressing the merits of Plaintiff's state law claims, it is necessary to

determine which state's law controls.

      "As a general rule, a federal court sitting in diversity or with pendent jurisdiction

over state law claims applies the choice of law rules of the state in which it sits." Shaw Family

Archives, Ltd. v. CMG Worldwide, Inc., 434 F. Supp. 2d 203, 207-08 (S.D.N.Y. 2006).  "When

confronted with a choice of law question, New York courts generally look to the law of the

jurisdiction that has 'the greatest interest in the litigation,' as determined by the 'facts or contacts

which . . . relate to the particular law in conflict.'" Watts v. Jackson Hewitt Tax Serv. Inc., 579

F. Supp. 2d 334, 345 (E.D.N.Y. 2008) (quoting Intercont'l Planning, Ltd. v. Daystrom, Inc., 24

N.Y.2d 372, 382 (N.Y. 1969) (internal citations omitted)).  Where parties have agreed that a

particular state's law will govern their dispute, however, "New York law gives full effect to

parties' choice-of-law provisions." Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996).

> The PNSA states that

> [t]his Agreement is governed by the laws (including, but not limited to, any and all
> statutes, regulations, interpretations and opinions) of the United States and the State of
> Ohio for all matters related to interest and the exportation of interest.  For all other
> matters, this Agreement will be governed by the laws of the United States, and the state
> of residence of the borrower (to the extent that such laws are not preempted by the laws
> of the United States).

(Wilk Decl. (Dkt. No. 16), Ex. 1 at 2)  As noted above, for purposes of resolving Defendant's

motion to dismiss, this Court has determined that Plaintiff's residence is New Jersey.

Accordingly, New Jersey law governs Plaintiff's contract claims.  See Commerce & Indus. Ins.

Co. v. U.S. Bank Nat'l Ass'n, No. 07 CIV. 5731 (JGK), 2008 WL 4178474, at *4 (S.D.N.Y.

Sept. 3, 2008) (under New York choice-of-law rules, a breach of the implied covenant of good

faith and fair dealing "is treated as a breach of the underlying contract for the purposes of

applying a choice of law provision").

> "Under New York law, a choice-of-law provision indicating that the contract will

be governed by a certain body of law does not dispositively determine that law which will

govern a [tort] claim . . . arising incident to the contract." Krock, 97 F.3d at 645 (emphasis in

original); see Plymack v. Copley Pharm., Inc., No. 93 Civ. 2655 (KMW), 1995 WL 606272, at

*5 (S.D.N.Y. 1995) (under New York law, "[a] contractual choice of law provision . . . does not

bind the parties with respect to non-contractual causes of action"); Rosenberg v. Pillsbury Co.,

718 F. Supp. 1146, 1150 (S.D.N.Y. 1989) ("While [a choice-of-law] provision is effective as to

breach of contract claims, it does not apply to fraud claims, which sound in tort.").

"[I]n order for a choice-of-law provision to apply to claims for tort[s] arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties." Krock, 97 F.3d at 645 (quoting Turtur v. Rothschild Registry Int'l, Inc., 26 F.3d 304, 310 (2d Cir. 1994)). Where "the choice-of-law provision in the parties' [contract] state[s] only that '[t]his [contract] shall be governed by and construed in accordance with the laws of [a particular state] . . . [there is] no way such language can be read broadly enough to apply to [tort claims]." Id. Given the language of the choice-of-law provision in the PNSA, it does not control what law applies to Plaintiff's consumer fraud or common law tort claims.

The Complaint "presents causes of action under the consumer protection statutes of both New York [Gen. Bus. Law § 349] and New Jersey [Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2]." Watts, 579 F. Supp. 2d at 345. "When courts apply [New York's] so-called interest analysis to laws that regulate conduct, such as the consumer protections laws at issue here, the jurisdiction with the greater interest is the one in which the injury to the plaintiff is suffered." Id. (citing Krock, 97 F.3d at 646; Sack v. V.T. Low, 478 F.2d 360, 365 (2d Cir. 1973)). "Generally, consumer fraud cases are governed by the law of the state where the consumer resides." In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig., 701 F. Supp. 2d 356, 379 (E.D.N.Y. 2010); cf. Jurgensen v. Felix Storch, Inc., No. 12 Civ. 1201 (KBF), 2012 WL 2354247, at *10 (S.D.N.Y. June 14, 2012) ("It is well settled that plaintiff does not have standing to bring claims for violations of consumer fraud statutes of states other than . . . the state where she resides.").

Here, Plaintiff has pled that he resided in New Jersey at all relevant times. Accordingly, New Jersey's Consumer Fraud Act, and not New York's General Business Law,

will be applied to Plaintiff's consumer fraud claim.  See In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig., 701 F. Supp. 2d at 379; cf. Szymczak v. Nissan N. Am., Inc., No. 10 CV 7493 (VB), 2011 WL 7095432, at *12 (S.D.N.Y. Dec. 16, 2011) ("States have no interest in applying their consumer protection statutes to buyers who live out of state and whose purchases occur out of state.").

As to Plaintiff's common law tort claims, under New York's choice of law rules, "[w]hen a conduct-regulating rule is at issue, the law of the place of the tort governs." Darboe v. Staples, Inc., 243 F. Supp. 2d 5, 19 (S.D.N.Y. 2003).  Accordingly, this Court will apply New Jersey law to Plaintiff's common law tort claims.  See id. ("The rule against intentional infliction of emotional distress is conduct-regulating, and plaintiff claims the alleged acts occurred in New Jersey.  As a result, that state's law applies.").

### 3.   **Consumer Fraud Claim**

Plaintiff alleges that Defendants violated New Jersey's consumer fraud statute by (1) "inducing payments from [Plaintiff] with the promise that there would not be any adverse late payment notation on his account or credit file and the[n] failing to honor [that promise]"; and (2) "increasing [the] interest rate [on the loan] to 9.44% as opposed to the interest originally quoted when the loan was approved."  (Cmplt. (Dkt. No. 1) ¶¶ 80-81)

Plaintiff's first claim directly implicates the subject matter regulated by the FCRA.  15 U.S.C. § 1681s-2 governs the furnishing of information to credit reporting agencies, and Plaintiff's first consumer fraud claim arises from Defendants' furnishing of information to credit reporting agencies.  Accordingly, this claim is preempted by Section 1681t(b)(1)(F) and must be dismissed.  See Okocha v. HSBC Bank USA, N.A., 700 F. Supp. 2d 369, 375-76 (S.D.N.Y. 2010) ("Plaintiff alleges that defendants violated [the unfair and deceptive business

practices statute] by (1) failing to maintain and follow reasonable procedures to ensure the accuracy of the information they reported, (2) failing to delete inaccurate information after notification, (3) failing to conduct proper investigations, and (4) reporting to third parties information affecting the plaintiff's reputation for credit worthiness, with knowledge or reason to know that such information was false.  All of these allegations appear to fall squarely within the subject matter of Section 1681s-2 (duties of [f]urnishers) and therefore are preempted.").

Plaintiff's claim that Defendants increased his interest rate over the rate specified in the PNSA does not fall within the ambit of the FCRA, however.  Accordingly, this claim is not preempted.

As to the merits of Plaintiff's New Jersey consumer fraud claim, Defendants' only argument for dismissal is that New Jersey law does not apply.  For the reasons explained above, that contention is incorrect.  Accordingly, Defendants' motion to dismiss Plaintiff's New Jersey consumer fraud claim will be denied to the extent that that claim is based on Defendants' alleged increase in the interest rate applied to Plaintiff's loan.

4.    **Defamation Claim**

The Complaint alleges that Defendants "falsely represented that Plaintiff was a deadbeat who did not pay his bills," and "falsely represented that Plaintiff was delinquent and in breach of his contractual obligations." (Cmplt. (Dkt. No. 1) ¶¶ 131-32)  In his brief, Plaintiff explains that "the false information alluded to . . . [in his defamation claim] is the alleged incorrect information on his credit file." (Pltf. Br. (Dkt. No. 23) at 19)  Because Plaintiff's defamation claim is based on Defendants' reporting to the credit reporting agencies, this claim "falls squarely within the subject matter regulated" by the FCRA and is preempted. See Campbell v. Bank of N.Y. Trust Co., N.A., No. 11 Civ. 1588 (CS) (PED), 2012 WL 2952852, at

*9 (S.D.N.Y. May 8, 2012), report and recommendation adopted, No. 11-CV-1588 (CS) (PED), 2012 WL 2953967 (S.D.N.Y. July 18, 2012) ("The Complaint includes a claim for slander of credit under New York state law and alleges that 'the actions of the Defendants have impaired Plaintiff[s'] credit' and 'caus[ed] Plaintiffs to lose the ability to have good credit[,] entitling Plaintiff[s] to damages.' . . . Plaintiffs are unable to establish Defendants' liability as a matter of law on their common law slander of credit claim, however, because the FCRA preempts such state law claims."); see also Markovskaya v. Am. Home Mortgage Servicing, Inc., 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012) ("The Second Circuit has held clearly that state law claims such as that alleged by Plaintiff for defamation of credit are preempted by the FCRA."). Plaintiff's defamation claim will be dismissed.

### 5.   Intentional Infliction of Emotional Distress Claim

Plaintiff alleges that Defendants "used the credit reporting system to cajole [Plaintiff] into acceding to and paying the illegally imposed princip[al], penalties, and related interest," causing him to suffer "severe emotional distress" and to feel "harass[ed], belittle[d], confuse[d], misle[]d and threaten[ed]." (Cmplt. (Dkt. No. 1) ¶¶ 113, 116) To the extent that Plaintiff's intentional infliction of emotional distress ("IIED") claim relates to Defendants' reporting to credit reporting agencies, that claim is preempted and will be dismissed. See Macpherson, 665 F.3d at 47-48 (holding that IIED and defamation claims were preempted by FCRA).

Plaintiff alleges in his opposition papers, however, that Defendants caused him emotional distress not only through their communications with credit reporting agencies, but also by improperly charging him more than he was contractually bound to pay and by "coercing" him to repay the debt. (Pltf. Br. (Dkt. No. 23) at 18; see Cmplt. (Dkt. No. 1) ¶¶ 113-116) Other than

18

reporting the debt to credit reporting agencies, the only factual allegations that relate to

"coercion" are those that describe Defendants sending Plaintiff notices for repayment.  (Cmplt.

(Dkt. No. 1) ¶ 33)

      Under New Jersey law, "[i]n order to state . . . a cause of action [for IIED],

'plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause,

and distress that is severe.'"  Taylor v. Metzger, 152 N.J. 490, 509 (N.J. 1998) (quoting Buckley

v. Trenton Saving Fund Soc., 111 N.J. 355, 366 (N.J. 1988)).  "'The conduct must be "so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."'"  Id.

(quoting Buckley, 111 N.J. at 366 (quoting Restatement (Second) of Torts, § 46 cmt. d)).  "'"The

liability clearly does not extend to mere insults, indignities, threats, annoyances, petty

oppressions, or other trivialities."'"  Id. (quoting 49 Prospect St. Tenants Ass'n v. Sheva

Gardens, Inc., 227 N.J. Super. 449, 472 (N.J. Super. Ct. App. Div. 1988) (quoting Restatement

(Second) of Torts, § 46 cmt. d)).

      The conduct Plaintiff alleges here is not sufficiently "extreme or outrageous" to

state a claim for IIED under New Jersey law.  See Fallas v. Cavalry SPV I, LLC, No. 3:12-CV-

05664 PGS, 2013 WL 1811909, at *9 (D.N.J. Apr. 29, 2013) ("The Complaint also fails to allege

that Defendants' conduct was extreme or outrageous. . . .  [T]he sending of three collection

letters over many months [ ] was not extreme or outrageous.").  Moreover, although Plaintiff has

alleged that he felt distressed and harassed by Defendants' conduct, he "has not even begun to

allege that he suffered emotional distress 'so severe that no reasonable man could be expected to

endure it.'"  Witherspoon v. Rent-A-Ctr., Inc., 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (quoting

Buckley, 111 N.J. at 368).  Accordingly, Plaintiff's IIED claim will be dismissed.

### 6.    Invasion of Privacy Claim

Plaintiff alleges that Defendants invaded his privacy by "engaging in highly offensive conduct in the course of collecting [his] debt[,] thereby invading and intruding upon Plaintiff's right to privacy" and "causing harm to Plaintiff's emotional well being." (Cmplt. (Dkt. No. 1) ¶ 121)  The factual basis for Plaintiff's claim is not clear.  A liberal reading of the Complaint might suggest that Plaintiff is asserting that Defendants invaded his privacy by reporting the purported debt and alleged delinquency to credit reporting agencies.  To that extent, his invasion of privacy claim is preempted by the FCRA.  "To the extent [that Plaintiff] attempts to make out a common law claim that falls outside the scope of the FCRA, [his] allegations are wholly conclusory and [his] legal theory is impossible to discern."  Shieh v. Flushing Branch, Chase Bank USA, N.A., No. 11-CV-5505 CBA SMG, 2012 WL 2678932, at *5 (E.D.N.Y. July 6, 2012).  Accordingly, the invasion of privacy claim will be dismissed.

### 7.    Breach of Contract

Defendants argue that Plaintiff's breach of contract claim should be dismissed because Defendants have the right, under the PNSA, to pay taxes on Plaintiff's behalf, and to add amounts above those originally estimated to Plaintiff's loan balance.  (Def. Br. (Dkt. No. 17) at 13-14)  Plaintiff concedes that Defendants "may have [had] the right to make disbursement[s] on Plaintiff's behalf," but he argues that the "disbursement in this instan[ce] was in[appropriate] because [the fees added to Plaintiff's loan balance were incurred as a result of] Chase's negligence [in paying the state sales tax late]."  (Pltf. Br. (Dkt. No. 23) at 11)

Accepting Plaintiff's allegations as true, Defendants had a contractual obligation to pay state sales taxes on Plaintiff's behalf and to do so in a timely fashion.  Although the DRA authorizes Defendants to charge Plaintiff's account for "any and all necessary adjustments, if

any, that occur after closing" (Wilk Decl. (Dkt. No. 26), Ex. 2), Plaintiff alleges that the

adjustments that Defendants made to his account were not "necessary" because they reflected

penalties that were incurred as a result of Defendants' negligence.  (Cmplt. (Dkt. No. 1) ¶¶ 91-

98)  Plaintiff alleges that he fulfilled all of his obligations under the parties' contracts by making

timely monthly payments, and that – as a result of Defendants' breach – he was forced to pay

more on the loan than he rightfully owed.  Such allegations are sufficient to state a breach of

contract claim.  See Delaney v. Am. Express Co., Civ. No. 06-5134 (JAP), 2007 WL 1420766, at

*4 (D.N.J. May 11, 2007) (quoting Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 210

F. Supp. 2d 552, 561 (D.N.J. 2002)) ("To maintain a claim for breach of contract under New

Jersey law, a plaintiff must allege and ultimately be able to prove: '(1) [the existence of] a

contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party

performed its own contractual duties.'").

### 8.    Breach of Duty of Good Faith and Fair Dealing

New Jersey law provides that a defendant may not be held liable for breach of

contract and breach of the implied duty of good faith and fair dealing "where the two breaches

arose from . . . identical conduct."  Kurnik v. Cooper Health Sys., No. A-4686-06T1, 2008 WL

2829963, at *24 (N.J. Super. Ct. App. Div. July 24, 2008); see also Aequus Techs., L.L.C. v. gh,

L.L.C., Civ. No. 03-5139 (WHW), 2011 WL 1211328, at *4 (D.N.J. Mar. 29, 2011) ("Because

the only breach of the implied covenant of good faith and fair dealing that [plaintiff] alleges is

[defendant's] breach of the contract, this claim is dismissed.").

Here, Plaintiff's good faith and fair dealing claim goes beyond the express terms

of the contracts.  Plaintiff alleges that Defendants repeatedly made misrepresentations to him

about charges on his account and corrective measures they would take concerning his account.

21

Plaintiff further claims that – even if Defendants do not have an express obligation under the contracts to pay late fees when they do not make a timely sales tax payment – Defendants have an implied obligation under the contracts to take whatever steps are necessary to register the vehicle in a timely fashion and not to pass along fees that were incurred as a result of Defendants' own negligence.  Such allegations are sufficient to state a claim for breach of the implied covenant of good faith and fair dealing.  See R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 277 (N.J. 2001) (quoting Ass'n Grp. Life, Inc. v. Catholic War Veterans of U. S. of Am., 61 N.J. 150, 153 (N.J. 1972)) ("[T]he implied duty of good faith and fair dealing means that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the full fruits of the contract.'").

     **D.**    **Remedies**

        **1.**    **Accounting**

     Plaintiff does not oppose Defendants' motion to dismiss his claim for an accounting.  (Pltf. Br. (Dkt. No. 23) at 19)  Accordingly, that claim will be dismissed.

        **2.**    **Punitive Damages and Attorneys' Fees**

     Defendants move to dismiss Plaintiff's claims for punitive damages and attorneys' fees.  (Def. Br. (Dkt. No. 17) at 19-20)  Both forms of relief are available under the FCRA.  15 U.S.C. §§ 1681o and 1681n provide for an award of attorneys' fees based on either negligent or willful non-compliance with the FCRA.  Section 1681n provides that punitive damages may be awarded based on willful non-compliance with the FCRA.  Here, Plaintiff has alleged facts demonstrating a knowing and willful violation of the FCRA.  Accordingly, Defendants' motion to dismiss will be denied as to these remedies.

## CONCLUSION

Defendants' motion to dismiss is denied in part and granted in part. The motion is denied as to Plaintiff's claims for (1) violations of 15 U.S.C. § 1681s-2(b) of the Fair Credit Reporting Act; (2) violations of the New Jersey Consumer Fraud Act related to Defendants' alleged increase in the interest rate applicable to Plaintiff's loan; (3) breach of contract; (4) breach of the implied duty of good faith and fair dealing; and (5) punitive damages and attorneys' fees. The motion is granted (1) to the extent that Plaintiff's FCRA claim is brought under 15 U.S.C. § 1681s-2(a); (2) to the extent that Plaintiff's New Jersey Consumer Fraud Act claim is premised on Defendants' reporting to credit reporting agencies; (3) as to Plaintiff's claims for defamation, intentional infliction of emotional distress, and invasion of privacy; and (4) as to Plaintiff's request for an accounting.[10]

---

[10] Defendants moved, in the alternative, for judgment on the pleadings, or for summary judgment. (Dkt. No. 12) To the extent that this Court has denied Defendants' motion to dismiss, there are issues of fact that preclude granting Defendants' motion for judgment on the pleadings and motion for summary judgment. Those issues of fact relate to, inter alia, the parties' performance under the contracts and the actions Defendants took (or did not take) to comply with their obligations under the FCRA. These issues of fact cannot be resolved on the basis of the pleadings and in the absence of discovery. Accordingly, to the extent that Defendants seek judgment on the pleadings or summary judgment, their motions are denied. See Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988) ("Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings."); Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001) ("[S]ummary judgment only is 'appropriate' when the moving party has met its burden of production under Fed. R. Civ. P. 56(c) 'to show initially the absence of a genuine issue concerning any material fact.'").

The Clerk of the Court is respectfully directed to terminate the motion (Dkt. No. 12) and to mail a copy of this Order to pro se Plaintiff Edward B. Mendy, 480 Laurel Lane, Kinnelon, New Jersey 07405.

Dated: New York, New York
   March 23, 2014

         SO ORDERED.

         Paul G. Gardephe
         United States District Judge